UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLENN MORRON and : | |
| WILLIAM HERTLER, : | |
|     Plaintiffs : | CIVIL ACTION NO. |
| : | 3:05-CV-1705 (JCH) |
| v. : | |
| : | |
| CITY OF MIDDLETOWN, et al., : | DECEMBER 4, 2006 |
|     Defendants. : | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS [Doc. Nos. 66, 68, 69, 70]**

The plaintiffs, Glenn Morron and William Hertler, bring this action against the defendants, the City of Middletown, Domenique Thornton, Edward Brymer, Philip Pessina, David Gervais, and Michael Timbro, alleging violations of their rights to free speech and equal protection secured by the First and Fourteenth Amendments and Conn. Gen. Stat. § 31-51q. The plaintiffs also allege that Thornton and Brymer defamed them, and that Timbro pursued vexatious litigation against them. The court's jurisdiction over this action allegedly arises pursuant to 28 U.S.C. §§ 1331 and 1343, as the plaintiffs' constitutional claims are being brought under Title 42, Section 1983 of the United States Code. The plaintiffs further allege that this court has supplemental jurisdiction over their state law claims pursuant to Title 28, Section 1367 of the United States Code.

All of the defendants have made partial motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motions are DENIED.

I.    **BACKGROUND**[1]

    A.    **Parties**

Morron, a resident of Colchester, Connecticut, was a duly sworn member of the Middletown Police Department ("MPD") for all times relevant to this action. In his capacity as an MPD officer, Morron was assigned to the department's Traffic Division. Hertler, a resident of Middletown, Connecticut, was also a duly sworn member of the MPD. Hertler was one of the MPD's designated D.A.R.E. Officers.

The City of Middletown is a municipal entity duly organized and existing purusant to the laws of Connecticut. Thornton was the duly elected Mayor of Middletown during those times relevant to the Complaint. Brymer was the duly appointed Chief of the MPD. Pessina was a duly appointed Deputy Chief of the MPD. Gervais was a duly appointed Captain in the MPD, and Timbro was a Sergeant with the MPD.

    B.    **Basic Facts**

On the evening of December 5, 2003, the plaintiffs were on duty at the scene of a severe, weather related traffic incident near Timbro's residence. Because of the extremely icy conditions, the road was closed to all traffic. Timbro approached the scene and was not permitted to drive to his home. He then contacted the MPD in order to circumvent this directive. When his effort failed, Timbro approached the plaintiffs and verbally and physically confronted them. Timbro then returned to his vehicle, drove around the road, made an obscene gesture to one of the emergency personnel on the scene, and drove to his home. Upon returning home, Timbro yelled obscenities and

---

[1]The following facts are taken from the plaintiff's Complaint.

threats at the plaintiffs and again approached the plaintiffs in order to physically confront them. The plaintiffs maintained a professional manner throughout the entire incident.

Soon after the incident, the plaintiffs filed a departmental report of their confrontation with Timbro, in addition to initiating criminal charges against Timbro. While the report and criminal charge were filed on forms that the plaintiffs used during the course of their day-to-day duties, they allege that this particular report and charge were not made in connection with their regular duties. Instead, they claim that they filed these documents as citizens expressing concern over the safety of themselves, other members of the MPD, and the general public.

After the plaintiffs filed these documents, Brymer and Pessina directed that an Administrative Inquiry be performed by Gervais, despite the fact the MPD's Professional Standard's Unit normally handles such reports about an officer's conduct.

Upon learning of the plaintiffs' reports, Timbro left two messages with Brymer which disparaged the plaintiffs and requested a meeting with Brymer to discuss a course of action against the plaintiffs. Brymer forwarded these messages to Pessina and Gervais.

When Gervais completed his administrative review of the plaintiffs' complaint, he submitted his findings to Pessina. Afterwards, Brymer directed that Pessina continue the investigation. The investigation against Timbro subsequently lagged for several months in the hope that it would just go away.

Meanwhile, Timbro, Thornton, Brymer and Pessina subjected the plaintiffs to a host of unfounded disciplinary actions as a result of the plaintiffs' report regarding

Timbro. Other similarly situated officers in the department faced no such disciplinary actions. The defendants also imposed selective pecuniary penalties against the plaintiffs, relating to matters such as overtime, while similarly situated officers did not receive similar treatment. In response to this treatment, the plaintiffs filed a number of reports of violations of city and/or departmental policies and procedures. They also requested assistance with what they felt to be a hostile work environment.

Based on the plaintiffs' privileged statements about Timbro made in their department reports, which were verified when Timbro was found guilty of violating multiple departmental policies, Timbro initiated a civil defamation suit against the plaintiffs. The suit was dismissed on the plaintiffs' motion for summary judgment.

Around September 2005, Morron observed Thornton driving in Middletown. The nature of her driving gave Morrow reasonable suspicion that Thornton was driving under the influence of alcohol. Morron stopped Thornton and, based on his observations of her behavior and a field sobriety test, arrested Thornton for driving under the influence of alcohol. The charges against Thornton were eventually dropped when lab tests showed that Thornton's blood alcohol levels did not exceed the normal limit, but the state court judge also found that the dismissal did not prove that the arrest lacked probable cause.

After the charges against her were dropped, Thornton repeatedly, publicly, and falsely stated that her arrest was politically motivated. She further accused the plaintiffs of being "rogue cops" and failing to do their jobs.

## II.   MOTION TO DISMISS STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1994). In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). In addition, Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

"In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the non-moving party." Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

### III.   DISCUSSION

#### A.   Plaintiff's Defamation Claim Against Thornton in Count Four

In making her motion to dismiss the plaintiffs' claims of defamation in Count Four, Thornton argues that the statements at issue are not defamatory in nature, that she is entitled to conditional or qualified privilege for her statements, and that the

plaintiffs cannot establish the actual malice needed to support their defamation claims. The court addresses these arguments in turn.

### 1.     Defamatory Nature of Thornton's Alleged Statements

To prevail on their defamation claim, the plaintiffs must show that Thornton, "published false statements that harmed the plaintiffs, and that [Thornton was] not privileged to do so." Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27 (1995). Such a charge of defamation is only actionable if the statement at issue "convey[s] an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." Daley v. Aetna Life and Casualty Co., 249 Conn. 766, 795 (Conn. 1999).

In asserting that this court can decide on a motion to dismiss whether Thornton's alleged statements were fact or opinion, Thornton cites to the decision in Fudge v. Penthouse Int'l, 840 F.2d 1012 (1st Cir. 1980), for the proposition that the question of whether a defamatory statement is fact or opinion "is a matter of law for the court." Fudge, 840 F.2d at 1016. However, both the First Circuit and the state of Connecticut recognize that determining the nature of an alleged defamation is highly contextual. See Fudge, 840 F.2d at 1016 ("In making this determination, we examine the statement itself, the article as a whole, and its social context.); Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111 (1982) ("This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the context that the maker is not intending to assert another objective fact."). The court therefore declines to find on the pleadings alone that Thornton's alleged comments about the plaintiffs

were mere opinions.

Thornton also claims that her alleged statements were not defamatory in nature because claims of police brutality do not involve moral turpitude, Thornton Mem. in Supp. at 7 (citing Moriarity v. Lippe, 162 Conn. 371, 383 (1972); that words such as "rogue" are insufficient since they only involve dishonesty, id. (citing Yakavicke v. Valentukevicius, 84 Conn. 350, 355 (1911); and that referring to an officer as a "menace" is not actionable where no special damages are alleged, id. (citing Zeller v. Mark, 14 Conn.App. 651 (1988). All of these arguments only apply to the plaintiffs' defamation claim to the extent that it relies on a "slander per se" theory of recovery.[3]

Under Connecticut law, "[slander] is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." Moriarty, 162 Conn. at 384. However, verbal utterances "are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 567 (1950). A fair reading of the Complaint shows the plaintiffs have alleged facts sufficient to satisfy Moriarty. See Compl. at ¶ 36. To the extent that Proto applies - i.e., those comments made by Thornton that only address a specific act of either Morron or Hertler - the court cannot resolve on the pleadings alone

---

[3]From the Complaint, the court cannot definitively determine whether the plaintiffs base their defamation claim on a theory of libel, slander, or both. See Compl. at ¶ 36 (stating only that "Thornton repeatedly, publicly, and falsely stated that Morron was politically motivated to make the arrest" and "Thornton falsely and publicly accused Plaintiffs of being "rogue cops" and failing to do their jobs.") The court, therefore, will only address the plaintiffs' defamation claims to the extent that Thornton contends they are not actionable as slander per se.

7

whether Thornton's comments were so charged as to constitute a general lack of integrity or competence.

### 2.     Thornton's Conditional Privilege

Thornton next argues that she is entitled to conditional privilege either because she spoke out against the plaintiffs in order to criticize public officials, or because she made the statement as a public official attempting to protect the legitimate interests of herself and/or a third party.  Thornton Mem. in Supp. at 8, 9 (citing, respectively, Moriarty, 162 Conn. at 386-387 (privilege for speaking out on public officials) and Flanagan v. McLane, 87 Conn. 220, 221-222 (1913) (privilege for public officials protecting legitimate interests).  As both types of privilege cited by the Thornton are normally treated as defenses, the court will not decide the matter at this stage in the litigation.  See Moriarity, 162 Conn. at 386; Flanagan, 87 Conn. at 221.

### 3.     Actual Malice

Relying primarily on the Supreme Court's decision in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), Thornton argues that the plaintiffs' defamation claim fails because they cannot make the necessary showing of actual malice.  Under Sullivan such a finding is necessary in defamation cases involving public officials or public figures.  Sullivan, 376 U.S. at 279-80.  "Actual malice" occurs when a statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not."  Id.

Considering the standard for set forth in Sullivan, the court finds that the plaintiffs have sufficiently alleged actual malice.  In the Complaint, they assert that, "Thornton's . . . false statements were made maliciously, intentionally, willfully, wantonly, and/or with

reckless disregard of the truth." Compl. at ¶ 41. Whether this assertion is ultimately tenable will be a matter for discovery.

Because the court rejects each of Thornton's contentions for dismissing Count Four of the Complaint, her Motion to Dismiss is denied.

### B. Plaintiff's Defamation Claim Against Brymer in Count Four

Brymer challenges the defamation claim against him in Count Four by arguing that, even under the relaxed pleading standards of Rule, the Complaint does not provide him with sufficient notice of the time, place, or manner of the statements alleged against him. The court agrees. With regards to Brymer, the Complaint only states that he made "several statements regarding Plaintiffs." Compl. at Count Four ¶ 40. Under the law of this Circuit, the plaintiffs' allegations are insufficient to sustain a defamation cause of action. See U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58, 109 (D.Conn. 2006) (citing Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). The court therefore grants Brymer's Motion to Dismiss Count Four. However, the court will permit the plaintiffs to replead if they are able to allege the claim against Brymer with sufficient particularity.

### C. Plaintiff's Free Speech Retaliation Claims in Counts Two and Three

#### 1. Requirement that Plaintiffs Speak "As Citizens"

It is well-accepted that "public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, __ U.S. __, 126 S. Ct. 1951, 1957 (2006). In light of this principle, the Second Circuit has found that, "while government enjoys significantly greater latitude when it acts in its capacity

as an employer than when it acts a sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. 2001). To determine whether a federal court is the appropriate venue in which to review whether a public agency unconstitutionally retaliated against an employee for exercising her right to free speech, the first question the court asks is whether the public employee spoke "as a citizen upon matters of public concern" or "as an employee upon matters of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983); see also Melzer v. Bd. of Ed., 336 F.3d 185, 193 (2d Cir. 2003). If the court finds that the employee spoke as an employee on a matter of personal interest, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 126 S. Ct. at 1958.

In Garcetti, the Supreme Court focused on when a public employee speaks "as a citizen" under the First Amendment. See Garcetti, 126 S. Ct. at 1956 (finding that the Ninth Circuit erred in ignoring whether the plaintiff made the speech at issue "as a citizen" and only determining that the speech addressed a matter of public concern). The Court attempted to balance "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion," with the need to avoid empowering public employees to "constitutionalize the employee grievance." Id. at 1958, 1959. Looking to the facts in Garcetti, the Court reasoned that, while relevant, the facts that the speech at issue was made inside the office, rather than publicly, and that the speech concerned the subject matter of the speaker's employment, were not dispositive. Id. at 1959. The Court ultimately found that the "controlling factor" in the case was that the speaker's "expressions were made

10

pursuant to his duties." Id. at 1659-60.  Thus, the Court held that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960.

In their Motions to Dismiss, the defendants argue that the plaintiffs are not entitled to First Amendment protection because they made their statements in the course of their official duties.  Central to their argument is the fact that the plaintiffs' alleged protected speech consisted of filling out a departmental report and initiating criminal charges against Timbro.  Given that the plaintiffs performed these actions by virtue of their positions as police officers and that their actions were consistent with the performance of their duties, the defendants essentially argue that the statements must have been made in the performance of their duties as police officers.

However, the Complaint clearly alleges that, "[a]lthough the departmental report and criminal charges were filed on forms that the Plaintiffs used during the course of their day to day duties, they did not submit this specific report and criminal charges in connection with the execution of their regular duties." Compl. at ¶ 16.  Thus, although the defendants have attached copies of the incident report and warrant application in question, the court finds that the plaintiffs are entitled to offer evidence in support of their claim that, in this instance, they were acting as citizens.

     2.  <u>Defendants' Adequate Justification for Alleged Adverse Actions</u>

The defendants also attack the plaintiffs' First Amendment retaliation claims by asserting that, even if the plaintiffs suffered adverse employment actions, the complaint itself demonstrates that these actions were justified given the state interests at stake.

11

Def. Mem. in Supp. at 24 (citing Rankin v. McPherson, 483 U.S. 378, 388 (1987). The defendants are certainly correct that employers have an interest in avoiding disruptive speech and that the court must balance this interest against the employee's interest in being able to speak as a citizen on matters of public concern. Id. Looking to what is alleged in the Complaint, however, the court cannot resolve as a matter of law that the plaintiffs will be unable to demonstrate that the defendants' actions were unjustified.

### D. Plaintiff's Equal Protection Claims in Count One

The plaintiffs' Equal Protection claims are premised on a "class of one" theory of recovery, as neither plaintiff claims to be a member of a protected group. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To prevail on a "class of one" Equal Protection theory, the plaintiffs must show that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. In general, a plaintiff's burden on a "class of one" claim is "extremely high," and a plaintiff cannot prevail absent a prima facie showing that he is identical in all relevant respects to the individuals with whom he compares himself. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze v. Village of Winthrop Harbar, 286 F.3d 452, 455 (7th Cir. 2002).

The defendants assert that the plaintiffs have failed to adequately plead an Equal Protection violation because they have not identified any similarly situated employees who were treated differently; the facts alleged showed that all of the defendants' alleged conduct was supported by a rational basis; and the Equal Protection claims must fail to the extent they are premised on the plaintiffs' First Amendment retaliation claims. Since the court has already found that the plaintiffs are

entitled to offer evidence on their First Amendment retaliation claims, it must reject the defendants' latter contention. As for the first two arguments, the court finds that the plaintiffs have adequately alleged the elements of a "class of one" Equal Protection claim. See Compl. at Count One, ¶¶ 39-42. While the plaintiffs may have a difficult time satisfying the requirements of Olech, the standard for deciding motions to dismiss compels the conclusion that this determination is best left for summary judgment.

### E.   Qualified Immunity for Claims Against Certain Individual Defendants

Pessina, Gervais, and Brymer have all claimed that they cannot be held individually liable for the federal violations alleged because they are entitled to a defense of qualified immunity. Generally, qualified immunity insulates government officials from personal liability when they perform discretionary duties pursuant to their official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in determining whether a government actor's actions warrant qualified immunity is "whether the plaintiff's version of the facts show[s] the officer's conduct violated a constitutional right." Demoret v. Zegarelli, 451 F.3d 140, 148 (2d Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). If, after construing the parties' submissions in favor of the plaintiff, the court concludes that the defendant did not violate any of the plaintiff's constitutional or statutory rights, the inquiry ends and the relevant counts are dismissed. Saucier, 533 U.S. at 201. But, if "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established" at the time of the alleged violation. Id. If the right was clearly established,

government officials are entitled to qualified immunity "only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." Demoret, 451 F.3d at 148 (citing Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004).

Here, the individual defendants claim they are entitled to qualified immunity because they prevail on each phase of the analysis. However, the court has already found that the plaintiffs have adequately plead that the defendants violated their constitutional rights to equal protection and free speech. The court must therefore determine whether the constitutional rights that the plaintiffs claim were violated were clearly defined at the time of the alleged conduct.

On the plaintiffs' First Amendment retaliation claim, the defendants argue that because the Supreme Court's decision in Burlington Northern and Santa Fe Railway Co. v. White, __ U.S. __, 126 S.Ct. 2405 (2006) overruled the Second Circuit's prior treatment of adverse employment actions and resolved a circuit split on this question, the law was not settled at the time of their alleged violations. However, the court finds that, during the period of time relevant to the events in question - roughly late 2003 through late 2005 - the Second Circuit's case law with respect to First Amendment retaliation was clearly established. See Feingold v. New York, 366 F.3d 138 (2d Cir. 2004).

That the defendants may not have been on notice of the impending change in the law is besides the point. White merely affects whether the defendants' alleged actions amounted to a constitutional violation, not whether the law was clearly established at the time of the alleged actions. When the defendants allegedly retaliated

14

against the plaintiffs for exercising their rights under the First Amendment, they were reasonably on notice that their conduct would amount to an adverse employment action if it materially altered the terms and conditions of the plaintiffs' employment. Feingold, 366 F.3d at 152. In fact, the defendants' argument is borderline disingenuous considering that proving an adverse employment action was almost certainly *more* difficult before Burlington Northern. Compare Burlington Northern, 126 S.Ct. at 2415 (holding that an adverse employment action is a measure that would dissuade a reasonable worker from making or supporting a charge of discrimination) with Feingold, 366 F.3d at 152 (holding that an adverse employment action must affect the terms and conditions of employment to be actionable).

The same fallacy defeats the defendants' claim that the Supreme Court's decision in Garcetti - which simply clarified at least one aspect of determining when a public employee speaks as a citizen on a matter of public concern - somehow demonstrates that the right to speak as a citizen on a matter of public concern was not clearly defined at the time the plaintiffs alleged their rights were violated. Other than to say that the Supreme Court issued a new decision concerning the First Amendment rights of public employees, the defendants do not direct the court's attention to anything about this area of law that was unclear during the relevant time periods.

Turning to the question of whether, on the pleadings alone, no reasonable jury could conclude that the defendants' conduct was unreasonable in light of clearly established law, the court finds that it is unable to resolve the issue without the benefit of a developed factual record. Therefore, the court denies the defendants' Motion to Dismiss based on qualified immunity.

### IV.    CONCLUSION

Based on the foregoing analysis, the defendants' Motions to Dismiss (Doc. Nos. 66, 68, 69, 70) are GRANTED in part and DENIED in part.  Brymer's Motion to Dismiss Count Four (Doc. No. 70) is GRANTED, with permission to the plaintiffs to replead the defamation allegation with sufficient particularity within ten days of this Ruling.  All other Motions to Dismiss are DENIED.

**SO ORDERED.**

Dated this 4th day of December, 2006, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge